May it please the Court, I'm Tanya Jackson here from UCLA's Law Clinic, certified to argue here. My co-counsel is Patricia Klemek from O'Malbany and Myers and we're here as amicus in support of Mr. Gossett. To split our ten minutes I will take roughly four minutes to focus on principally on why Kepler is inapplicable here and Ms. Klemek will address the qualified immunity issues, the intertwining merit issues there, and the rebuttal. We ask that you this record's decision granting summary judgment to respond and check because Kepler is inapplicable. Kepler interpreted section 407 which is an anti-alienation statute, however, the anti-alienation statute in Kepler was worded differently with respect to the issues in this case. Section 407 did not expressly prohibit claims of creditors. In the statute that we're dealing with, section 5301, claims of creditors are prohibited and claims of creditors cannot reach veterans' benefits. Does that really get to the issue of whether or not the state is a creditor? Why is the state a creditor in this setting? In this setting, first of all, in Kepler the Supreme Court said that the state in that setting was not a creditor. There was no state law that required the foster care children to repay the state for the foster care services provided. Here, however, we have a California state law which does make Mr. Gossett liable for the care and maintenance provided by the institution, and that's Welfare Institutions Code 7279. I'm sorry, 7275. Why would the existence of that statute actually reduce the state's rights? If the state of Washington had rights in the Kepler case, despite the absence of a statute making it a creditor, how is the state of California's position diminished to be less than Washington because it has a statute that does make it a creditor? It seems to me that a creditor may be just an add-on, but wouldn't diminish whatever rights the state would have in the first instance. The reason why the state's rights is diminished here is because there is a federal statute that says if there is a creditor attempting to reach the California may not be able to proceed as a, quote, creditor, but why doesn't California have the same right that Washington has in the social security context? Section 5301 went a lot further in attempting to protect veterans' benefits than Section 407 did to protect social security benefits. Section 5301 is a lot broader in the sense that it does say that veterans' benefits can't be reached by creditors. It says that veterans... But California's not doing it as a creditor. California's doing it the same way that Washington did in Keffler, which the Supreme Court said was not as a creditor. So what is it that precludes California from collecting here in the same way that Washington collected there? What Keffler... what the Supreme Court said in Keffler was... The Supreme Court said that the process, they were focusing on whether or not what the state was doing constituted a legal process that was impermissible under Section 407. That was the language that they were interpreting. They were not interpreting whether or not the state was a creditor for purposes of the statute, because Section 407 did not contain any language that prohibited a claim of creditor. Here, however, we do have a claim of creditor language, and it's not resolved. Whether or not the state is a creditor is not resolved by Keffler, because Keffler did not have to take on that task. There was no language that prohibited it. In fact, the Keffler opinion very specifically notes that there's no creditor language in the statute, and what the statute... the 407 that the Keffler Court is dealing with says various forms of judicial process, attachment, carnishment, and so on, are forbidden. But there's no generic prohibition in that 407 statute with respect to creditor, which is how they're getting around some of the other case law. Correct. And Section... and yes, that's correct. In Section 5301, in the sense that it expressly forbids a claim of creditor, the district court in this case should have examined, at least examined, whether or not the hospital here was considered a creditor. It didn't do that. It just... I go back to the question I asked before. Is being a creditor the only way the State can collect? Plainly, and that wasn't the case in Keffler, because Washington was described... the State of Washington was described by the Supreme Court as not being a creditor, and yet it still found a way to collect. I mean, a creditor comes in for past due debts. The theory here, I think, is that the language used in Keffler was representative payee, and the language is different here, but the point is the same. The trust officer receives the money to be spent for the benefit of the individual, in this case, the plaintiff. You can expend that in current time, that is, spend things for that person in the time, without necessarily acting as a creditor to collect for past due debts. So what is it in the current statute, the statute that applies to this situation, that precludes the State from spending the money as it perceives best, on behalf of plaintiff, by paying his current living expenses? I see that my time is running out, but I will briefly address that question. The difference here is, aside from the express language of the statute, the agency here has promulgated the statute in a way that does forbid this institution from reaching the veteran's benefits, unless they follow the You said prevents anybody from doing it. What in that regulation provides that the regulation is the exclusive mechanism to be used? That comes from just an examination of the regulation with the statute. Well, is there anything in the language, by its own terms, that precludes, as you argue, the State from collecting in any other way? I mean, there is a mechanism set up. That's correct. The mechanism, I'm not sure it says this is the only way that somebody can collect or utilize the funds. With respect to Section 5301, it broadly states that claims of creditors are not, creditors cannot reach veteran's benefits, and we interpret that as saying that any, the claim, the creditor cannot reach the veteran's benefits by any mechanism. If it were only by legal process that was prohibited, then claim of creditor's language would have been redundant, because there's already a legal process language in the statute that is forbidden. Do we know whether in this case, we know we are taking year over, don't worry about that. That's our problem, not your problem. Do we know whether in this case the State is taking benefits from him as reimbursement or whether the State is taking them as advance payment? Do we know that on this record? On this record, we do not know that, and that is one of the problems with the record. There is not enough factual evidence at this point to make a determination as to whether or not Mr. Cech is actually complying with the elements of 13.71, whether or not it's an advancement, whether or not it's an assignment. On this record, it's just not clear, and that's one of the reasons why we think summary judgment is improper here. Ms. Jackson, again, we'll give you your team more time here, but it's, doesn't your argument render 38 CFR 13.71 meaningless? I mean, this is a reimbursement regulation. Nobody seems to have complied with it here, but it's, if this is a creditor situation, then why have that at all? Well, 13.71 appears to be a way to get around the 5301 creditor prohibition in the sense that 13.71 requires the institution to waive its right to further claims, and so far as the institution has to waive further claims, it is taken out of the reach of a creditor status. You think the answer to the problem I posed is that there has to be a waiver. Other than that, it's meaningless. There's some, yes, 13.71 counterbalances 5301. If you're a creditor, you can't reach the benefits, but if you use 13.71 correctly, if you go by the criteria that's set forth in 13.71, we no longer consider you a creditor and be. You know, that doesn't make any sense to me. In fact, neither side on this point makes any sense to me. As I read 13.71, I'm going to read it to you. It says, 13.71A, institutional and domiciliary care of an institution operated by a political subdivision of the United States. That's the premise for 13.71. NAPA is not an institution operated by a subdivision of the United States. In the statute, there's an exception for payments to the United States. 13.71, as I read it, comes directly within the exception written into the statute. So 13.71 is simply not available to a state institution seeking money. Do you have an answer to that? I read 5301 as creating an exception for claims from the United States. However, 13.71 applies to a political subdivision of the United States. Of the United States. Which would be the state, Napa State is a state, Napa State Hospital. The state, under any normal definition of language, is not a political subdivision of the United States. But is there a political, I mean, that language is rarely, I don't think I've seen that language before. What is a political subdivision of the United States if not a state? There are no subdivisions of the United States other than it's states and the parties thereof, unless you consider the military a subdivision. I would view it as the military, various agencies, and so on. But I don't see that 13.71 should be construed as authorizing something for a state when it seems to me that it conflicts with the language of the statute. And it's easily brought into the language of the statute if you put it in under this 5301 doesn't apply to claims of the United States. Or a subdivision. Yeah. Veterans Hospital. It's a brave new world. It is indeed. In that case, your honor, we would still. I have to say I was totally puzzled by 1371 until I look at this political subdivision of the United States language. As were we, your honor, but the district court, it's a very complex regulatory scheme, as you can see. And we think that the district court should have at least examined it. Kepler says that you have to defer to the agency's regulations. In this particular case, by applying Kepler blindly, the district court did not at least examine the VA's regulations that say you can't, that the fiduciary has to invoke the creditor's defense. The district court should have at least examined the statutes, at least tried to work the regulations along with the statutes, and determined if the hospital is a creditor within the meaning of section 15. Okay, well, we've, I think we've given you your money's worth. Why don't we hear from co-counsel? Nice job. Good morning, your honors. May it please the court, Patricia Klemek from LaMalvenie Meyer, also MECA's counsel on behalf of Mr. Gossett. I'd like to pick up where my co-counsel left off. The court's first question is why is the state a creditor here? We can look to Kepler for instruction as to how to define the words, the rights created in an anti-alienation provision. Kepler teaches two things. First, that the words of the statute are critical in determining what rights are created by that statute. In Kepler, the question was whether there was other legal process. The answer was no. Here, we have a different statute that says that veterans' benefits are exempt from claims of creditors. Claims of creditors is the question that the district court should have considered and analyzed those words to determine whether a Section 5301 claim here. Well, isn't that, in fact, how we get to the issue with respect, due respect to my colleague? I construe a political subdivision in the United States as including states, since there are no subdivisions of the United States other than states and subparts, since they are political. So if you assume that the states are political subdivisions, then how can you construe 1371 as being anything other than a non-creditor? Otherwise, the statute and the regulation are completely opposed to one another. Are they not? No, that is not our view of the regulation. OK, what is your view? And Kepler says to defer to the regulatory agency that promulgates regulations pursuant to a statutory scheme. So certainly 1371 would instruct the analysis here. The way we view 1371 is that the VA views the institution as a creditor in the first instance, because one of the conditions of 1371 is that the hospital must waive any legal claims it has to the future veterans' benefits. So in the first instance, under 5301, the hospital is a creditor and cannot obtain any veterans' benefits under 5301. Why do you, the premise of all of this appears to be that there are mutually exclusive positions. Either you have to be a creditor or you can't be a creditor. I don't understand why somebody can't be both at once or why the only person who can spend money on behalf of somebody else has to be deemed a creditor. My son's a freshman in college. I support him. Am I his creditor or am I simply paying his bills because he is under my care? I think that the premise of Kepler, and it seems to be the premise of the regulation, is not that the state is coming in trying to collect past due amounts for all the money I've spent on you over the years, but rather is receiving money and spending it for the current benefit of the individual, be it under veterans' benefits or Social Security benefits, and that's not a creditor. That's the father figure or the in loco parentis or the person who's taking care of somebody else by spending on current maintenance. Now, that person could also be a creditor. I could lend my son some money, or I could say to him, you owe me since kindergarten and try to collect in that capacity. And so it seems to me, I look at this and I say, well, the state is allowed to spend money on a current basis, can't go back and collect from current benefit payments for past spent amounts. And that seems to me entirely consistent, excuse me, with our court's case, which is not Kepler, but is Nelson, which draws the distinction and it's maybe an odd place to draw the line, but says you can't advance money and then collect it out of the benefits, but there's nothing that prohibits you from spending the money as it comes in on current maintenance. Now, the record may not be developed enough here in this case to tell us what it is, but tell me what's wrong with that formulation, why somebody can't be both a potential creditor and also spending for current purposes. The difference between you and your son and the hospital in this case is that the ordinary definition of creditor is an entity to whom a debt is owed. In your case with your son, you have no legal rights as a parent to pursue a legal debt against your son since kindergarten. And that's the same situation that was in Kepler, where the state was acting as a parent supporting the children. There was no obligation on the part of the state, and actually the Supreme Court noted this, that there was no duty on the part of the children to repay the state for taking care of them. That's different here because the state is acting as a creditor pursuant to section 7275. How can that be, let me ask this, this man is institutionalized, he was accused of murder but found guilty, and not guilty by reason of insanity. That's the classic and loco parentis situation. He is the ward of the state because of his insanity. The state has an obligation to take care of him under the law. Why is that a creditor, following up on what Judge Clifton said? Why is the state a creditor in that situation? Unlike Nelson, where there was an advancement of actual cash to buy cigarettes and things like that, and then they seized that. That's different. Here the state has a legal obligation as the guardian, if you will, of this incompetent person to take care of him. That's not a creditor, is it? It does have a legal obligation to take care of Mr. Gossett, but it also has a legal right pursuant to California Statutes 7275 and 7279 to collect for the costs of care and maintenance. And that is what makes the state a creditor in this situation, which was unlike the situation in Keffler where there was no statute that created this duty, this obligation on the part of Mr. Gossett to repay the state for taking care of him. I'm asking the same question my two colleagues have asked, but I'm asking it only in a slightly different way. Assume for a moment that the state would be a creditor if it were seeking reimbursement from Mr. Gossett's VA benefits. Assume that that's so. What happens if the state says, well, OK, I don't want to advance you the treatment and then go after reimbursement. I'm just not going to give you the care until you pay me ahead of time. Now, in that circumstance, can the state say, well, I'm not a creditor anymore. I get the money? Well, I don't think the state can do that because it has a legal obligation to care for Mr. Gossett regardless of whether he pays or not. Isn't that what 1371 contemplates, though, is a mechanism whereby the Veterans Administration can provide money for the care and maintenance of veterans in circumstances where they can't take care of themselves? That's correct, but in order to obtain any benefits under 1371, it has to first waive any legal rights it has to pursue its debt against Mr. Gossett. And by waiving those rights, it basically changes the hospital's character from that of a creditor to sort of more of a voluntary donee. On 1371, your argument seems to be that all we have is a very conclusory affidavit that 1371 has been complied with, and you think the record is not clear on this point as to whether or not 1371 has in fact been complied with. That's correct. It was Mr. Chek's burden on summary judgment to show that he complied with 1371. He's in essence using it as an affirmative defense. And in your view, is 1371 would allow NAPA to be reimbursed that NAPA is a political subdivision of the United States? That's our view of the regulations, but that should have been decided in the first instance we think by the district court rather than dismissing it at the summary judgment stage. It should have, the court should have looked at the regulations. Now, I think I know the answer to this. I think no one argued below on the question as to whether or not NAPA or any state institution is a political subdivision of the United States within the meaning of this regulation. That's correct because the court just looked at Kepler and said these statutes are very similar. Therefore, I'm going to grant summary judgment. So that argument may not be, that may not even be before us as an argument. And by the same token, again, we understand you're sitting here dealing with the record that you were handed. Was there any counter affidavit or opposition filed, because this was summary judgment, to the, what you described as conclusory affidavit filed on behalf of the state with regard to compliance with the regulation? I mean, is there anything in the record that as a factual matter puts that at issue? Well, Mr. Cech is deemed mentally incompetent by the VA and also he wasn't represented by counsel. So he didn't put a. Mr. Cech is deemed incompetent. I'm sorry. This could be a major. They'll be surprised to hear that. Wouldn't that be fun? No, Mr. Gossett was. That would be two incompetents battling each other. Mr. Gossett was rated incompetent, mentally incompetent, and also not represented by counsel. So he didn't have a formal. So his first representation is in front of us. So he was not represented in front of Judge Alsop. That's right. He was not. So he did put into his pleadings that he believed that Mr. Cech was not following the federal rules and regulations. Would you contend, I know this wasn't raised by either party, but we always have to be concerned about jurisdiction. If we got to the point, would you agree that the administrative remedies have not been exhausted if somebody does have to go through 1371? I don't believe the regulations require that there be administrative remedies exhausted before proceeding to court. And the action is under 5301 using 1371 as sort of an affirmative defense to that. So we think jurisdiction is proper under Section 1983. Okay. I think to the extent we can get it, given the complications of this case, I think we've got your position fairly much in hand. Let's hear from the State, and we'll give you a chance to respond. We're clearly going over, but the clerk's office, when it allocates time doesn't always quite understand what may be in the case. Yeah. Thank you, Your Honor. Good morning. May it please the Court, I'm Harry Gower for the appellee, Al Chek. I want to quickly discuss a couple of issues regarding the concept of whether or not the State is a creditor. One point was raised that there was no State law in the Keffler case in Washington requiring reimbursement for the foster care provided. And I'm not so sure that that's the case. In the case, the Washington Supreme Court case that went up to the U.S. Supreme Court and became the Keffler case, and the name of that case is the guardianship of the estate of Danny Keffler versus the Department of Social Health Services. That site is 145 Washington 2nd, page 1, 2001 case. They discussed Washington State regulations, in particular regulation 74.13.060, which provides that if a child in foster care is entitled to financial benefits, the income received shall be used on behalf of the child to help pay for the cost of the foster care received, which is very similar to the State statute. It's not a statute, it's a regulation, but clearly Washington was contemplating that if funds were available to these foster children that they would collect it. I don't know whether this is on the record, but isn't that really true of every state in the United States? I would expect. I haven't looked at every state in the United States, but I would suspect. I mean clearly the State of California will take care of Mr. Gossett whether he has funds available to him or not, and clearly the State of Washington would take care of these foster children whether they had funds available to them or not. But if they do have funds available to them, the state would like to get some payment for the services they have. What do we know? I'll assume that either the argument is waived or in fact on the merits that NAPA is a political subdivision of the United States for purposes of the regulation. Yes, I believe it is. Why on that assumption is the regulation .71 proper? Is it proper because the state is not asking for reimbursement but is rather asking for advance payment? Because when somebody is asking for reimbursement, under ordinary vocabulary that person is a creditor. If they're asking for advance payment, of course they're not a creditor. Or is there some other basis on which .71 is valid and consistent with the ordinary but language understanding of creditor? Well, as I understand the language of creditor, I think it's used really in a financial, I mean it involves a financial transaction like in the Nelson B. Heitz case, advance money, now I want it back. Or I perform services and now I want the money. Right. Can you correct the record for me on one thing so that we're all on the same page here? My impression was that Mr. Cech was receiving money as it was due, apparently there's a regular periodic payment that would be made on behalf of Mr. Gossett by the Veterans Department and it was being made to Mr. Cech who kept the money available and it was used to pay for services as they went along. Is that correct or is it in fact a reimbursement? No, that's the way it was done. The money came in to the trust account and he was the trust officer. So in fact this is not a reimbursement at all. The money came in, had it in an account, as expenses were incurred on his behalf, they would just be paid. That's correct. How do we know that? I mean that's the question I asked them and they said it wasn't in the record and they couldn't tell. How do you know that? Well, I... Or maybe I should say, how do we know that? I would... I'm sure I read it in one of the briefs, but I'm not sure that that means it's there, so... A couple of things, I would direct the court's attention to the appellee's excerpt of record, pages 29 and 30, which is the fiduciary agreement that the Department of Veteran Affairs had the trust officer at Napa State Hospital enter into. And on page 30, the agreement describes how the monies are to be used. I think it's the third paragraph down, all monies not needed for the maintenance and upkeep of the beneficiary are to be placed in an interest-bearing account. Did the agreement describe the discretion that Mr. Chick had and how this was handled? Did it say, for example, that as expenses were incurred, he was to pay them, or does it talk about his reimbursing the state, or does it say anything at all about that? I don't know if there's anything in the record specifically in that. I think that kind of... The payment scheme is described in 38 CFR 13.71, and how the monies are to be applied. And that is the very thing I was questioning your opposing counsel about before, is that that regulation, at least as I read it, contemplates the ongoing care of a disabled or mentally incapacitated vet who cannot care for him or herself, and you set up a trusteeship arrangement so that the funds of that person can be used for their ongoing care. Is that your understanding of that regulation as well? Yes. And that is, in fact, what Mr. Chick claims to have done, right? Yes. And that's what also the Veterans Administration confirms that he did in the declaration of Mr. Dennis Aldrex. Do you know what the ER is on that, on the declaration from the Veterans Administration? That is docket number 28, and it's a two-page declaration. Do you have the records of record reference? In the excerpt of records, in the appellee's excerpt of records, it's pages 15 through 17. Okay, thank you. And he describes that the trust officer of Napa State Hospital charges a share of cost of the funds for Mr. Gossett's maintenance and care. Yeah, and I've got a problem on page 16 of that very declaration, and it may be a misuse of words, and I'm not sure how much importance to attach to it. Paragraph 4, this is Mr. Aldrex saying how... Of reimburse, yeah. A share, pursuant to da-da-da-da-da, the trust officer charges a share to reimburse the hospital. Now, reimburse in ordinary language means... Payback. Yeah. Yeah, I know. So what am I supposed to do with that? Well, I think... Is that just an imprecise use of terms? I think it was, and I think a lot of the appellant's case is this... I think it really elevates form over substance in some respects. The Veterans Administration set up Mr. Cech as the representative payee, as the legal custodian of Mr. Cech, and as the representative payee for the funds to use for his maintenance and care. And there's no... It was not an issue in the case below about whether those funds were improperly or properly allocated or anything like that. The only issue below is whether or not that is proper, whether that comports with or violates Section 5301, whether a point... I'd say as a general proposition, the scheme that the hospital is following here and the Veterans Administration seems to be eminently sensible. I mean, I'm not coming at this like saying, how could you guys possibly be thinking you're entitled to take this guy's money? I'm just trying to figure out how what you're doing fits within the statutory and regulatory structure. And that term creditor is quite a difficult term. Well, if I could... I mean, I think we have to defer to the Veterans Administration. They clearly did not contemplate the state or Mr. Cech. So you're suggesting it's almost a Chevron deference kind of a thing? Yes, I think so. If you look again at page 30 of the Pelley's excerpt record, you'll see the third paragraph down right, where they contemplate that the representative payee uses money for maintenance and upkeep of the beneficiary. But then a couple paragraphs down from there, it admonishes the fiduciary that he's responsible for protecting the money from the claims of creditors. So clearly the VA makes its own distinction between money for upkeep and the claims of creditors. The VA kind of likes that Mr. Cech is a local parentis to use... He's got Clifton's analogy, does it not? Yes, he's Mr. Cech. What do you make of the Savoy case, which is a D.C. Circuit case, and the Department of Health and Rehabilitation Services, State of Florida v. Davis case, which, like you, take the position that this type of an expenditure does not involve a creditor, versus the Third Circuit's Higgins v. Byer? Well, the Higgins case, I mean, that money, they were taking that money to pay a criminal fine, a restitution fine. So the money was not going to the veteran beneficiary, it was going to the victim of his crime. And I gather you would distinguish our Nelson case, that's where an actual cash advance was made to buy cigarettes and things like that. No, the trouble is he was buying copies of medical records and he was buying dental devices. So both of those, it seems to me, fit within the maintenance and care sort of category. This wasn't for cigarettes. Well, I think that... But the point is that the money was clearly advanced in what amounts to a financial transaction, it was basically an overdraft protection. Well, and what may save you or get you out from under Nelson is you don't have a .71 regulation. That is to say, they were just doing it on their own, as it were, without benefit of clergy. And here we've got... We wouldn't want to refer to that in the Ninth Circuit, would we? And, let's see, I think... Let me interject, and this just follows up and just tidies up one point. It seems to me that I don't think you can carry the day, for your point of view, merely by saying the purpose for which these funds are put, that is to say, maintenance and care, because lots of debts are incurred for purposes of maintenance and care. Rent, mortgage, car, so you can go to work, whatever. And I don't think, just because the money is going to go for those things, that a creditor is entitled to reimbursement for all of those things, and so on and so on. Your narrower argument, it seems to me, that you've got a regulation here that says, in this particular version of care, where it's treated, even if they use the word incorrectly in the affidavit calling it reimbursement, for present purposes, the regulation says, no, this isn't a creditor, not necessarily because of the purpose for which the money is used, but rather the manner in which it is dispersed. Can I ask you one more question here? I know your opposing counsel takes the position that there's no requirement to exhaust administrative remedies, but as I read 38 U.S.C. 511A, in this Secretary, the Secretary of Veterans Benefits is required to decide questions of law, in fact, necessary to a decision by the Secretary under the law that affects the provision of benefits by the Secretary to veterans or dependents or survivors of veterans. If that's correct, don't you have to exhaust administrative remedies before the Department of Veterans Affairs, before you can appeal to a court? In short, do we even have jurisdiction to hear whether or not Section .71 has been complied with until a record has been examined and a determination made? Honestly, I don't know. It was not... I realize it wasn't brief, but again, jurisdiction is always an issue for us. And I guess I think I share the problem that all of my colleagues and I have, which is that we're talking about very technical applications of what is and is not a creditor, and yet nobody seems to really know what actually happened here. Did these funds come in, as everybody indicated? Is the declaration correct? Was Mr. Cech simply getting a bill from the state and reimbursing the state for what it had already expended, or did he use the money directly to pay obligations and the state was nowhere involved other than it was in that hospital? We don't know, as far as I can tell. The record doesn't say. And that's why I'm interested in your perspective on whether or not we have an exhaustion of administrative remedies problem here. Yeah, like I say, it wasn't asserted below. Who's supposed to exhaust? The plaintiff, Mr. Gossett? Yes, he would have to exhaust. It started out as a nice, simple process of filing. The next thing you know, you've got some sharp lawyers and soon-to-be lawyers, and then you've got some judges expanding even further. I knew more about it when I came in. It's a minute. Thank you. Would either of you like to have a moment for response? Yes, please. Okay. Let's start you out with a minute and see what happens. Thank you. On the jurisdictional issue, Your Honor, this claim was brought under Section 83 for a 5301 claim, and it can't be that the plaintiff brings a claim under a federal statute and then the defendant, really in the appellate briefs, raises 1371 as a defense. But 1983 goes back to whether or not constitutional and other rights have been violated, and if you can't tell whether the rights have been violated without having an administrative hearing, doesn't that kind of raise an issue? Well, we think that 5301 is clear on its face and that this Court can find it. Let me ask one other question. Given the fact that you are a very able counsel, you have an able opposing counsel, hopefully the three judges have some understanding of the law, and you can tell this is quite a muddle, under the circumstances, is there any question that Mr. Cech is entitled to qualified immunity because the law was not clear? We think the law is clear. In Anderson v. Creighton, the Supreme Court said that the test for that is whether the contours of the right are sufficiently established that a reasonable official would know that he's filing the law, and 5301 has very plain language about the claim of creditors. But we've explored that in a little greater depth here, and it seems to me that, I mean, if you see absolute clarity in this, you have a far better mind than I, because it seems to me we have a, this is a very complex issue, very complex issue. How could Mr. Cech possibly know what the contours of the law are in this case? Well, as the trust officer of the hospital, that's his job. He says in his declaration that he is responsible. Even though he's a trust officer, if the law is not clear, how can he know it? Well, we think the law is clear based on the plain language of the statute. It's also informed by 1371, which says, institution, if you want the money, here's how you get it. You have these four conditions, you have to be... Has Mr. Gossett asked for injunctive relief with respect to future payments or reimbursement? Yes, both. So we can't dodge the bullet on deciding the underlying question. That's true. The case was left to be remanded on that issue. And the Patsy case tells us that no administrative exhaustion is required in 1983 cases. That's correct. I'd like to just briefly address, Mr. Gower made the argument that we should be And I agree. The VA tells us that under 1371, how the institution can get this money. And Mr. Gower pointed to the fiduciary agreement. And the fiduciary agreement actually also discusses the reimbursement of charges. Once again, putting the institution back in the position of a creditor, unless 1371 is followed, in which case they waive their rights as a creditor and are able to obtain some small portion of the benefits after the conditions are satisfied. Would you be content if we were to say that 1371 allows the NAPA to be paid, but we're simply remanding for determination as to whether 1371 is being complied with? Yes, that's exactly what I'd ask for, Your Honor. Would that be enough for you? Yes, thank you. Do I have no further questions? Thank you. Thank you very much.
judges: Fletcher W. , Clifton, Smith M.